IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN CENTENO-MARTINEZ | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-3593 |
| | : | |
| J.L. JAMISON, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                    **November 12, 2025**

Petitioner Juan Centeno-Martinez brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (DHS). He argues that continued detention by DHS without a bond hearing violates his due process rights under the Fifth Amendment. Because his detention has become unreasonably long, the Court will grant his petition.

**BACKGROUND**

Mr. Centeno is a native and citizen of El Salvador. Pet. ¶ 1, Dkt. No. 1. He was admitted to the United States as a lawful permanent resident on August 1, 1994, and has resided here since. *Id*. ¶ 15. On January 5, 2001, he was convicted of aggravated manslaughter in New Jersey and was sentenced to ten years in prison. *Id*. On May 13, 2014, the Department of Homeland Security (DHS) served Mr. Centeno with a Notice to Appear (NTA) seeking to remove him from this country, pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA) for a crime of violence under INA § 101(a)(43)(F). *Id*. ¶ 16. DHS later amended the NTA on May 28, 2019, to include a charge of aggravated felony under INA § 101(a)(43)(A). *Id*.

On April 25, 2024, Mr. Centeno was arrested and charged with aggravated assault and theft in New Jersey. *Id*. ¶ 18. That same day, he was detained by DHS under 8 U.S.C. § 1226(c), which provides that the "Attorney General shall take into custody" any noncitizen who is "deportable by

reason of having committed any offense covered" in INA § 237(a)(2)(A)(iii) of the INA.[1] *Id*. He has remained in custody since. *Id*. While detained, Mr. Centeno attempted to terminate his detention by filing a motion for custody redetermination on May 21, 2024, and amending it on June 10, 2024. *Id*. ¶ 19. Immigration Judge Adam Panopoulos denied the motion on June 11, 2024. *Id*.

Judge Panopoulos also conducted a master calendar hearing on June 11, 2024, where the Government's NTA charges against Mr. Centeno were reviewed. *Id*. ¶ 20. The case was continued to allow Mr. Centeno to file an Application for Asylum and Withholding of Removal (I-589). *Id*. On July 10, 2024, Mr. Centeno filed the I-589. *Id*. Judge Panopoulos conducted a merit hearing on October 21, 2024, and issued an order of removal. *Id*.

Mr. Centeno appealed the order of removal to the Board of Immigration Appeals (BIA) on March 3, 2025. *Id*. ¶ 20. On May 2, 2025, the BIA affirmed Judge Panopoulos's order of removal. *Id*. ¶ 21. On May 8, 2025, Mr. Centeno filed a petition for review of the removal order with the Third Circuit Court of Appeals, which stayed his removal pending review of the order. *Id*. Mr. Centeno submitted his opening brief for his Third Circuit petition on October 3, 2025. Dkt. No. 6.

On July 14, 2025, Mr. Centeno filed the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that his detention is unreasonable in violation of Fifth Amendment. Pet. ¶¶ 34-45. He has been detained since his arrest on April 25, 2024. *Id*. ¶ 18. He is currently detained at the Moshannon Valley Processing Center in western Pennsylvania (Moshannon), where he has spent most of his detention. Gov't Resp. 3, Dkt. No. 3. From late February to late July 2025,

---

[1] He was previously detained by DHS on June 17, 2016, and was released on March 22, 2017, following the grant of a pro se habeas petition. Pet. ¶ 3 n.1.

roughly five months, he was held at the Federal Detention Center in Philadelphia (FDC Philadelphia). *Id*.

**DISCUSSION**[2]

Under 8 U.S.C. § 1226(c), noncitizens who are removable due to certain criminal convictions are subject to mandatory detention. Mr. Centeno, however, asserts his detention has become so prolonged that due process entitles him to a bond hearing. The Due Process Clause requires that detention under 1226(c) remains reasonable in length. *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018). "[W]hen detention becomes unreasonable," the Fifth Amendment requires a bond hearing—where the government must prove, by "clear and convincing evidence that continued detention is necessary." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210, 213 (3d Cir. 2020). "Reasonableness is a 'highly fact-specific' inquiry." *Id*. at 210 (quoting *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474 (3d Cir. 2015)). To determine whether a noncitizen's detention under 1226(c) has "grown unreasonable," courts in the Third Circuit consider a nonexhaustive list of four factors: (1) length of detention; (2) whether detention is likely to continue; (3) the reasons for delay; and (4) whether the conditions of confinement are meaningfully different from criminal punishment. *Id*. at 211. The length of detention is the "most important factor." *Id*. at 211.

Here, Mr. Centeno is entitled to a bond hearing. First, the length of detention weighs in his favor. "Although there is no 'bright-line threshold' for when detention becomes unreasonable, [a noncitizen's] 'detention becomes more and more suspect after five months.'" *Grigoryan v.*

---

[2] Federal district courts have jurisdiction over habeas petitions that raise constitutional challenges to detention under 8 U.S.C. § 1226. *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citation and quotations omitted)).

3

*Jamison*, No. CV 25-1389, 2025 WL 1257693, at *3 (E.D. Pa. Apr. 30, 2025) (quoting *German Santos*, 965 F.3d at 211). Mr. Centeno has been detained by DHS since April 25, 2024, approximately eighteen and a half months now. *See, e.g.*, *Grigoryan*, 2025 WL 1257693, at *3 (finding that seventeen months is unreasonable) (listing cases); *Abioye v. Oddo*, 704 F. Supp. 3d 625, 630 (W.D. Pa. 2023) (finding eighteen months weighs in favor of a bond hearing); *Clarke v. Doll*, 481 F. Supp. 3d 394, 397-98 (M.D. Pa. 2020) (adopting R&R finding that eighteen months weighs in favor of a bond hearing).

The second factor also weighs in favor of a bond hearing because detention is likely to continue. On October 3, 2025, Mr. Centeno filed his opening brief for petition for review with the Third Circuit Court of Appeals. Dkt. No. 6. According to Mr. Centeno, the Government has thirty days to respond, and Mr. Centeno will have twenty-one days after that to file a reply brief. Pet'r's Reply 3, Dkt. No. 4. Argument is typically scheduled months after briefing concludes, with a decision often issued months thereafter. All things considered, Mr. Centeno's detention will likely continue for several months while the Third Circuit decides the petition for review.

The third factor is neutral. "Absent carelessness or bad faith," courts generally do not hold delays against the parties. *German Santos*, 965 F.3d at 212. Neither the Government nor Mr. Centeno have intentionally delayed or unreasonably prolonged his removal proceedings. Since Judge Panopoulos issued a removal order in October 2024, Mr. Centeno's removal case has been advancing naturally through the appellate process.

The final factor weighs in favor of a bond hearing because the conditions of confinement at FDC Philadelphia and Moshannon are not materially different from criminal punishment.[3] Mr.

---

[3] The Court considers his detention at both FDC Philadelphia and Moshannon because "the *German Santos* factors are both backward and forward-looking." *Grigoryan*, 2025 WL 1257693, at *4.

4

Centeno, who has spent years in prisons, asserts FDC is "worse" and "more restrictive than in any of [his] state prison terms" due in part to frequent lockdowns and strip searches. Pet'r's Ex. A ¶¶ 1-4, 10, Dkt. No. 1-3 at 5-8. He also asserts Moshannon "is basically run like a prison" and "is about as bad as state prison" because of severe overcrowding, violence, poor sanitation, and poor medical care. Pet'r's Ex. T ¶¶ 1-3, 9-10, Dkt. No. 4 at 17-20. Further, many courts in this circuit have found the conditions of confinement for immigration detainees at FDC Philadelphia and Moshannon to be penal in character. *See, e.g.*, *Grigoryan*, 2025 WL 1257693, at *5 (finding the petitioner's "conditions while housed at FDC were not meaningfully different from criminal punishment" and the conditions "at Moshannon are 'penal in character'"); *Akhmadjanov v. Oddo*, No. CV 25-35, 2025 WL 660663, at *5 (W.D. Pa. Feb. 28, 2025) ("[I]t cannot be said that Petitioner's conditions of confinement are *meaningfully* different from the confinement of criminal punishment."); *Morgan v. Oddo*, No. CV 24-221, 2025 WL 1134979, at *5 (W.D. Pa. Apr. 17, 2025) (same).Because the balance of the *German Santos* factors favors Mr. Centeno, the Court finds that his prolonged detention violates the Due Process Clause.

Having concluded that Mr. Centeno's continued detention has become unreasonable under the Due Process Clause, the Court turns to the appropriate remedy. The question is whether to remand for an Immigration Judge to conduct a bond hearing or to conduct the hearing in this Court.

The Court will conduct the individualized bond hearing itself as a habeas remedy. District courts in this Circuit have exercised that authority, describing it as a "legal and logical concomitant" of habeas jurisdiction, particularly where delay risks perpetuating the constitutional injury. *See Leslie v. Holder*, 865 F. Supp. 2d 627, 634-35 (M.D. Pa. 2012); *Thaxter v. Sabol*, No. 14-02413, 2016 WL 3077351, at *3 (M.D. Pa. June 1, 2016); *cf. L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 404-07 (E.D.N.Y. 2025) (proceeding in the first instance given Immigration Judge docket

5

constraints). Here, detention is already approaching nineteen months and is likely to continue several months while the petition for review is resolved. Prompt judicial review is therefore warranted.[4] The Government will bear the burden to prove by clear and convincing evidence that continued detention is necessary to prevent flight or danger to the community.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[4] While the Court is cognizant of the Government's position that remand to the Immigration Judge is the more common practice absent a prior deficient Immigration Judge bond hearing (*see* Gov't Letter Br., Dkt. No. 11), the Court's primary concern is addressing the constitutional violation and ensuring the proper standard is applied at the bond hearing.